**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CLIFTON RAYE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-354** |
| **DARREL VANNOY, WARDEN** | **SECTION: "E"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.   *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Clifton Raye, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.   On September 26, 2013, Raye was charged with five different counts involving the juvenile victim (DOB 7/6/1999), including two counts of aggravated rape (victim under 13), two counts of sexual battery (one count - victim under 13 years of age), and one count of oral sexual battery.[1]   He elected a bench trial and was found guilty as charged on all counts on March 1, 2016.[2]   On March 10, 2016, he was

---

[1]   State Rec., Vol. 1 of 10, Grand Jury Indictment, Jefferson Parish.

[2]   State Rec., Vol. 1 of 10, Trial Minute Entry, 3/1/2016.

sentenced to life imprisonment on counts one and two, 25 years on count three, and 10 years

on counts four and five, all without benefit of parole, probation or suspension of sentence, to

be served concurrently.[3]

In December 2016, he filed an application for post-conviction relief, alleging that he

was denied the right to appeal and seeking an out-of-time appeal.[4]    On December 20, 2016,

the district court granted him an out-of-time appeal.[5]    In his one assignment of error on

direct appeal, he argued that there was insufficient evidence to support the convictions.

On October 25, 2017, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and

sentences.[6]    On June 15, 2018, the Louisiana Supreme Court denied his application for writ

of certiorari.[7]

On or about August 15, 2019, Raye submitted a second application for post-conviction

relief to the state district court.[8]    In that application, he raised nine claims alleging

ineffective assistance of trial counsel for the following acts or omissions:    (1) generally

---

[3]  State Rec., Vol. 1 of 10, Sentencing Minute Entry, 3/10/2016.

[4]  State Rec., Vol. 1 of 10, Uniform Application for Post-Conviction Relief.

[5]  State Rec., Vol. 1 of 10, State District Court PCR Judgment, 12/20/2016.

[6]  *State v. Raye*, 2017-KA-136 (La. App. 5 Cir. 10/25/17), 230 So.3d 659; State Rec., Vol. 5 of 10.    On error patent review, the court of appeal remanded for the statutorily required written notifications to defendant and correction of the commitment order. *See* State Rec., Vol. 1 of 10, Minute Entries 1/9/2018 and 3/1/2018.

[7]  *State v. Raye*, 2017-KO-1966 (La. 2018), 257 So.3d 674; State Rec., Vol. 5 of 10.

[8]  State Rec., Vol. 6, 9 of 10, Uniform Application for Post-Conviction Relief and Memorandum in Support.    His request to amend was granted and claim eight was added. State Rec., Vol. 2 of 10, Petitioner's Motion to Amend and District Court's Amended Order dated Oct. 11, 2019.

prior to and during trial; (2) failure to object to evidence insufficient to sustain convictions; (3) failure to object to prosecutorial misconduct; (4) failure to secure expert testimony; (5) failure to object to perjured testimony at trial; (6) failure to file various pretrial and post-trial motions; (7) failure to object when the prosecution violated the witness sequestration order; (8) failure to object to a defective indictment; and (9) cumulative error.    On February 12, 2020, the state district court denied his application for post-conviction relief.[9] He filed a supervisory writ application raising five claims of error with various subclaims concerning ineffective assistance of counsel.    On April 23, 2020, the Louisiana Fifth Circuit denied his supervisory writ application.[10]    On January 20, 2021, the Louisiana Supreme Court likewise denied relief finding that he failed to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).[11]

On February 18, 2021, Raye filed the instant federal application for habeas corpus relief.[12]    In that application, he raises five claims for federal relief:    (1) he was denied effective assistance of counsel before and during trial; (2) trial counsel was ineffective for failing to object to evidence that was insufficient to sustain the convictions; (3) trial counsel was ineffective for failing to object to prosecutorial misconduct; (4) trial counsel was ineffective for failing to object to perjured testimony at trial; and (5) trial counsel was ineffective for failing to object to a defective indictment.    The State does not argue that the

---

[9]  State Rec., Vol. 3 of 10, State District Court Order Denying PCR, 2/12/2020.

[10]  State Rec., Vol. 3 of 10, *Raye v. Cain*, 20-KH-114 (La. App. 5 Cir. Apr. 23, 2020).

[11]  *Raye v. Cain*, 2020-KH-0665 (La. 1/20/2021), 308 So.3d 1148; State Rec., Vol. 8 of 10.

[12]  Rec. Docs. 1, 5, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

federal petition is untimely, and concedes that the claims, for the most part, have been exhausted in the state courts.[13]    Raye filed a traverse to the State's response.[14]

## Facts

On direct appeal, the Louisiana Fifth Circuit summarized the facts adduced at trial:

At trial, the victim, C.R.,[15]  testified that when she was eleven or twelve years old, the defendant, her biological father, forced her to begin a sexual relationship with him. More than once a week, when her mother was at work, defendant would bring C.R. into his bedroom, lock the door, and make her perform oral sex on him. C.R. described several incidents at her home where defendant penetrated her vagina with his penis, massaged her breasts, performed oral sex on her, and digitally penetrated her anus. C.R. also testified that, on one occasion, defendant attempted to restrain her with a belt while he attempted to have anal sex with her, but she broke free.

C.R. stated that she did not report the abuse because she was scared and did not want to get her father into trouble. C.R. testified that she denied that any abuse had taken place when she was first asked about it by her step-sisters, but later disclosed what had happened to her after her stepsister, S.D., told her about a similar personal experience she had previously with defendant.[16]

S.W., C.R.'s step-sister, testified that, in late March or early April of 2013, she lived with C.R., defendant, and her mother in Jefferson Parish. She recalled that, during that time, one afternoon she arrived home and saw C.R.'s school bag, but could not find C.R. S.W. knocked on defendant's bedroom door, which was locked. S.W. knocked on the door to hand defendant a telephone. A short time later, defendant and C.R. both exited the bedroom.[17]  S.W. testified that,

---

[13]  Rec. Doc. 14, pp. 3, 7.

[14]  Rec. Doc. 20.    Petitioner's traverse with attached exhibits that included confidential medical records pertaining to the juvenile victim were sealed by order of the Court.    Rec. Doc. 19.

[15]  Testimony established C.R.'s birthdate as July 6, 1999, and she was 16 at the time of trial. To preserve the confidentiality of the minor victim's identity in this case, the victim, the victim's family members, and other related witnesses will be referred to by their initials, pursuant to La. R.S. 46:1844(W).

[16]  S.D. testified at trial that defendant had sexually abused her.

[17]  C.R. testified that during this incident, defendant had forced her to perform oral

in another incident, she woke up in the early morning hours to use the restroom and saw defendant in C.R.'s bed. Because she suspected that something inappropriate may have been happening between defendant and C.R., S.W. called her sister S.D. to discuss her concerns. S.W. and S.D. decided to discuss the suspicions at their grandparents' home in Lafayette during the upcoming Easter holiday.

Several days later, while in Lafayette, C.R. was asked by S.W. and S.D. about the suspected sexual abuse by defendant. C.R. initially denied any abuse, but eventually disclosed to S.W. and S.D. that defendant had performed oral sex on her and that she had performed oral sex on defendant. This information was relayed to C.R.'s mother, E.R., who confronted defendant with the allegations. Defendant denied having any sexual contact with C.R.

Tracey Jackson, an investigator for the Department of Children and Family Services (DCFS), testified that she was notified of C.R.'s complaint against defendant on April 9, 2013, and she interviewed C.R. on April 10, 2013. During the interview, C.R. told Ms. Jackson that defendant had sexually abused her numerous times over the preceding two-year period, specifically that defendant had "fondle[d] her," "touch[ed] her chest," "touched her vaginal area" penetrating her with his fingers as well as his penis, penetrated her anus with his fingers, performed oral sex on her, and that she performed oral sex on defendant. Ms. Jackson relayed this information to the Jefferson Parish Sheriff's Office (JPSO) following the interview with C.R.

Detective Ronald Raye, of the JPSO Personal Violence Unit, testified that he went to C.R.'s home[18] and brought her to Children's Hospital for a physical examination. Detective Raye prepared defendant's arrest warrant after speaking to Ms. Jackson, watching C.R.'s interview at the Children's Advocacy Center and reviewing C.R.'s hospital records.

Ann Troy testified that she is a forensic nurse practitioner who works with child victims of sexual abuse at the Audrey Hepburn Care Center in New Orleans. Ms. Troy recounted that she interviewed C.R. on April 27, 2013, and C.R. recounted a "detailed history of sexual abuse" by defendant over a two-year period that included oral sex, vaginal and anal penetration with his penis, and forcing C.R. to masturbate him. Ms. Troy found C.R.'s statements to be consistent with the way in which children disclose sexual abuse. She further noted that the physical findings from her examination of C.R. were normal.

---

sex on him.

[18]   JPSO Deputy Brent Baldassaro testified that he was the first officer to respond to C.R.'s home after the complaint was made. At that time, Deputy Baldassaro determined that the JPSO Personal Violence Unit needed to be notified.

However, Ms. Troy testified that it is not uncommon for a child with a history of vaginal penetration to present with normal physical findings. Ms. Troy further explained that delayed reporting is very common amongst children who have been sexually abused as they tend to blame themselves for what has happened to them.

The trial judge was shown the video of an interview between former forensic interviewer, Erika Dupepe, and C.R., which took place in April of 2013[19] at the Children's Advocacy Center in Jefferson Parish. During that interview, C.R. described defendant's sexual abuse of her in detail. C.R. stated that, at age 11, defendant would go to her bedroom while she was sleeping and touch her chest and buttocks. Defendant also touched her "privates" and made her touch his "privates" while her mother was at work or asleep. Beginning at age 12, defendant vaginally penetrated C.R. with his penis twice, and digitally penetrated her anus three times. C.R. described one incident when defendant forced her to perform oral sex on him. She was 12 at the time and in seventh grade. Defendant forced C.R. to perform oral sex on him on more than one occasion. The last incident of sexual abuse took place in March of 2013, when defendant forced C.R. to masturbate him and perform oral sex on him. During that particular time, C.R.'s sister knocked on the defendant's bedroom door to give him the phone, and defendant told C.R. to hide in his bathroom.

Defendant testified at trial and denied that any sexual contact had taken place between himself and C.R. He further testified that he believed the accusations against him were made out of anger by C.R. and S.W.[20]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to

---

[19]   The exact date of the interview is not clear from the record. Prior to when the tape was shown to the trial judge, Ms. Dupepe testified as to the general procedure of making a recorded interview with a victim at the Children's Advocacy Center. At the conclusion of the video, Ms. Dupepe testified that the video was an accurate representation of the interview that she conducted with C.R.

[20]   *State v. Raye*, 230 So.3d at 662-64 (footnotes in original).

the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").   With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."   *Bell v. Cone*, 535 U.S. 685, 694 (2002).   A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.   *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).   An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."   *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

Raye was represented throughout his proceedings by Mr. Wayne E. Walker and Mr. William Doyle. His federal application raises multiple claims of ineffective assistance of counsel involving one or both counsel of record. Claim one alleges generally that counsel rendered ineffective assistance prior to and during trial. As grounds for relief, he argues that he was denied counsel entirely because lead counsel of record, Wayne E. Walker, "impermissibly proceeded to represent petitioner in pre-trial and trial proceedings without first being registered and authorized to practice law in the State of Louisiana."[21] He also

---

[21] Rec. Doc. 5-3, p. 12.

cites several alleged deficiencies pertaining to Mr. Doyle individually.    He lists ten

additional subclaims, with no supporting argument, as part of claim one, wherein he alleges:

> Petitioner further claims that his trial defense counsel failed to:    Investigate
> and obtain all evidence in possession of the State; 2) Adequately confront and
> cross-examine state witnesses Mrs. S.D., S.W. and C.R.; 3) Failure to put forth a
> defense; 4) Cross-examine witness for impeachment purposes; 5) to make
> timely objections to hearsay; 6) Fail to investigate and present mitigating
> evidence; 7) to object to trial courts finding of guilt without first excluding
> every reasonable hypothesis of innocence; 8) to object to evidence insufficient
> to sustain conviction; 9) to put the States case to any meaningful adversarial
> testing; 10) to recall S.D. for re-cross examination to impeach her to her prior
> trial testimony.
>
> Petitioner contends that, had counsel performed the above listed functions of
> a reasonable trial strategy he would have met the reasonable doubt required
> to change the outcome of the trial.[22]

Claim two alleges that counsel was ineffective for allowing evidence insufficient to sustain

the conviction.    He argues that counsel should have objected on various grounds to the

improper evidence presented by the State and filed appropriate motions for mistrial, new

trial and post-verdict judgment of acquittal.    Claim three alleges that trial counsel failed to

object to prosecutorial misconduct that resulted in an unfair trial and violated his due

process rights.    Claim four alleges that trial counsel allowed the State to offer perjured

testimony from S.D. at trial.    Finally, claim five alleges that counsel should have objected to

a defective indictment.    These claims were rejected on the merits by the state courts during

post-conviction review.[23]

In order to prove ineffective assistance of counsel, a petitioner must demonstrate

---

[22]  Rec. Doc. 5-3, pp. 12-13.    Initials will be used in reference to the victim and her
family members who testified at trial.

[23]  State Rec., Vol. 3 of 10, Order denying PCR (Feb. 12, 2020); Fifth Circuit Order 20-
KH-114 (Apr. 23, 2020); and Louisiana Supreme Court Order 2020-KH-665 (Jan. 20, 2021).

both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984).    If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

Because the claims were adjudicated on the merits in state court, habeas relief is

available only if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.    28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86 (2011).    "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."    *Richter*, 562 U.S. at 105 (citations omitted).    The Supreme Court has stressed, in no uncertain terms, that "a federal court may grant relief only if *every* " 'fairminded juris[t]' " would agree that *every* reasonable lawyer would have made a different decision.    *Dunn v. Reeves*, 141 S.Ct. 2405 (2021) (citing *Richter*, 562 U.S. at 101, 131 S.Ct. 770).

*Claim 1 – Denial of Right to Effective Assistance of Counsel Prior to and During Trial*

As part of his first claim for relief, Raye argues that he was denied counsel entirely because lead counsel, Wayne Walker, was ineligible to practice law in the State of Louisiana and could not provide him constitutionally effective assistance either pretrial or during trial. As the state courts correctly found, his factual contention underlying the claim is not supported by the record in this case.    Raye insists that counsel was ineligible to practice throughout his representation of Raye, even though the evidence shows otherwise.    He continues to misconstrue the certificate from the Louisiana State Bar Association.[24]    The state courts denied the claim post-conviction, citing the State's exhibit from the Louisiana State Bar Association, which was attached to its response and showed the brief period of time in September 2013 during which Mr. Walker was ineligible because of nonpayment of

---

[24]    Rec. Doc. 20, Traverse, p. 7 and Exhibit D, Response to Public Records Request – LSBA Certificate.    Raye also attaches documents to his traverse reflecting unsuccessful disciplinary proceedings he instituted against Mr. Walker.

his disciplinary assessment and bar membership dues (namely 9/09/2013 – 9/25/2013).[25] As of September 9, 2016, the certificate signed by the Director of Finance and Membership for the state bar reflects that he was ineligible for nonpayment of dues, fees and noncompliance with the Trust Account Disclosure Form.    By this time, however, Raye's trial and sentencing (March 2016) had concluded.    Raye has offered nothing to show that Mr. Walker was ineligible or otherwise not in good standing when he represented Raye pretrial and during trial.[26]    Arguably, even if this brief period of ineligibility for nonpayment of dues had overlapped his representation, that would not constitute ineffective assistance *per se*.    *See*, *e.g.*, *McKinsey v. Cain*, 09-7729, 2011 WL 2945812, at *2 (E.D. La. July 15, 2011) (attorney's ineligibility was not a *per se* violation of the Sixth Amendment, as it resulted from a failure to meet the technical requirements of bar membership).    In this case, however, Mr. Walker was eligible to practice when he filed several preliminary motions on Raye's behalf in June 2013 (prior to Raye's indictment and involving bond reduction and preliminary hearing).    Similarly, after Raye's indictment on September 26, 2013, Mr. Walker remained eligible to practice and was properly serving as lead counsel in jointly representing Raye along with co-counsel of record, William Doyle.[27]    Raye has not shown

---

[25] State Rec., Vol. 2 of 10, State's PCR Response with attached Certificate (Exhibit 1).

[26] To the contrary, Raye attaches a letter to his traverse dated January 13, 2020 from the Louisiana State Bar Association that confirms on the relevant dates in question Wayne Walker was eligible and in good standing and had no disciplinary actions taken against him. Rec. Doc. 20.

[27] While no allegation was ever made concerning post-trial representation, the Court notes that Mr. Walker did not file a motion to withdraw; nor did he file a motion for appeal on Raye's behalf.    Only Mr. Doyle filed a motion to withdraw as attorney of record post-trial (State Rec., Vol. 1 of 10, Motion to Withdraw filed and order signed April 2016).    In any event, no prejudice resulted as Raye was subsequently granted an out-of-time appeal and was appointed counsel to represent him on appeal.    Even though no post-trial motions

that he is entitled to relief on this claim.

The second part of this claim broadly encompasses subclaims 1-6 and 9, and involves alleged inadequate pretrial preparation, investigation and discovery, presentation of a meaningful defense and inferior handling of objections and cross-examination during trial by his counsel of record such that counsel purportedly failed to subject the case to meaningful adversarial testing.    In particular, he argues that counsel failed to obtain Detective Ronald Raye, Jr.'s arrest affidavit, evidence surrounding the victim's school records, attendance, academic and social life, and the CAC videotape.    He contends the inadequate investigation and preparation led to ineffective cross-examination of the State's witnesses and his conviction based on hearsay and false testimony.

The state courts rejected the 10 vague subclaims as speculative and conclusory because Raye failed to set out the claims with any specificity or to support them.    Generally, a habeas petitioner cannot establish a *Strickland* claim based on speculative and factually unsupported assertions.    *Ochoa v. Davis*, 750 F. App'x 365, 371 (5th Cir. 2018) (quoting *Sawyer v. Butler*, 848 F.2d 582, 589 (5th Cir. 1988)) ("Indeed, '[u]nsupported allegations and pleas for presumptive prejudice are not the stuff that *Strickland* is made of.' ").    For this reason alone, his subclaims that lack any factual support or argument fail, and the state-court ruling was proper.    However, even if liberally considered, to the extent possible, the claims lack merit.

With respect to an attorney's duty to investigate, the controlling law provides:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made

_____

were filed, appellate counsel raised a sufficiency-of-the-evidence claim on his behalf and that claim was fully considered and denied on the merits.

> after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. at 690-91).    As for the arrest affidavit, there is no record evidence that the State failed to provide the information to the defense as part of open file discovery or that defense counsel was unaware of the affidavit.    In fact, the State countered Raye's allegation by providing a copy of the defense's discovery receipt, which confirms the documents were given to defense counsel. [28]    Regardless, Raye's argument is that, had defense counsel reviewed the arrest affidavit and been aware it reported the "initial disclosure" by the victim as being made at a different place and time and to a different sibling, then the defense could have fully cross-examined S.D. and S.W. and impeached them because the affidavit "contradicts the state's theory of the case" as to "whom, what and where, if any was disclosed by [the] victim."[29]    Presumably, Raye believes that the trial court would have rejected all of their testimony as having been discredited.

The State filed a notice of intent to introduce the testimony of S.D., regarding what the victim told her, under the initial disclosure exception to hearsay.[30]    S.W. was part of the

---

[28]    State Rec. Vol. 2 of 10, State's PCR Response, Exhibit 2. *See also* State Rec., Vol. 3 of 10, State District Court PCR Order, 2/12/2020 (Claim 3).

[29]    Rec. Doc. 5-3, pp. 16, 18.

[30]    State Rec., Vol. 1 of 10, Notice of Intent to Introduce Statement of Initial Complaint of Sexually Assaultive Behavior.

conversation, along with her sister S.D. and the victim, during which the victim admitted to S.D. that her father had touched her inappropriately.    Both siblings, and the victim, testified consistently at trial to this conversation taking place at their grandmother's house in Lafayette on Easter weekend and the details of the discussion.    The defense objected to S.D.'s testimony about what the victim told her, but the trial court overruled the objection because it was the initial disclosure.[31]    Nothing detailed in the arrest affidavit would have changed this course of events.    The affidavit plainly states that it is based upon the victim's statements made during the forensic interview, which Detective Raye was present for (in a different room), and received a copy of, as part of the investigation.[32]    Defense counsel acknowledged reviewing a copy of the victim's videotaped forensic interview and stipulated at trial to its authenticity.[33]    The videotaped interview was played for the trial court during the forensic interviewer's testimony.    The trial judge, as the trier of fact at the bench trial, was able to weigh and reconcile any internal inconsistencies between the victim's forensic interview and her testimony at trial and any conflicts in the trial testimony offered by the victim and her siblings, S.D. and S.W.

The extent to which counsel chooses to emphasize inconsistencies in witness testimony is strategic in nature and subject to counsel's professional judgment.    *Ford v. Cockrell*, 315 F. Supp.2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005); *Peters v. Vannoy*, Civ. Action 17-2598, 2018 WL 7917923, at *22 (E.D. La. July 19, 2018),

---

[31]  State Rec., Vol. 5 of 10, Transcript of Trial, p. 38.

[32]  State Rec., Vol. 7 of 10, Arrest Affidavit.

[33]  State Rec., Vol. 5 of 10, Trial Transcript, p. 110.

*adopted* 2019 WL 1469438 (E.D. La. Apr. 3, 2019).   Reviewing courts should employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.   *Strickland*, 466 U.S. at 689.   The best evidence of the victim's actual statements made during the CAC interview was the videotaped recording itself, not the arrest affidavit of a detective containing his report of details gleaned from that interview.   Here, even if the affidavit had not been disclosed, the inconsistency contained in an arrest affidavit by a detective would not have been proper to use on cross-examination of S.D. or S.W., and in addition to being objectionable, would have served no purpose other than to badger the witnesses, including the young rape victim.

Next, Raye asserts that counsel should have investigated and introduced mitigating evidence surrounding the victim's exceptional school records, attendance, academic and social life, all of which purportedly contradicts state expert and forensic pediatric nurse practitioner, Anne Troy's, opinion that the victim's disclosures in this case were consistent with sexual abuse.[34]   Evidently, he believes that the victim not experiencing social or academic difficulties contradicts her account of sexual abuse and thus Nurse Troy's expert opinion.   The record shows that at the start of the victim's testimony the State prosecutor questioned the victim about her academic record and participation in activities.   The victim testified that she received high grades, excelled in math and science, had lofty aspirations to be a surgeon and participated in activities outside of school.[35]   The court was aware of

---

[34]   Rec. Doc. 5-3, p. 17.

[35]   State Rec., Vol. 5 of 10, Trial Transcript, pp. 114-15.

these factors when weighing the medical evidence and Nurse Troy's expert opinion and still found Raye guilty of all charges.    Raye fails to show that additional investigation and introduction of school records by the defense would have altered the outcome.

Raye suggests that attorney Doyle's conduct was substandard because he denied Raye the right to discover the videotaped forensic interview and failed to correct co-counsel's statement at trial that the defense had seen it.    He offers no support for his conclusory assertion that the defense did not have access to the video or any rational reason co-counsel Doyle should have objected to Mr. Walker informing the trial court that they had seen a copy of the video when the State sought to introduce it into evidence.[36]    Obviously, whether or not Raye was aware or chooses to credit his counsel's affirmative statement, his counsel had access to the victim's recorded interview.    Raye has not shown that he is entitled to relief on this claim.

Raye also asserts that counsel failed to make timely hearsay objections.    As the state courts noted, he failed to support the claim and has not identified any instances in the record where this allegedly occurred.    In reviewing the transcripts from trial, however, the undersigned found instances where hearsay objections made by Mr. Doyle were slightly belated and made after the witness had already provided a full response to the question. One instance occurred during S.W.'s testimony where she related statements made by S.D. and the victim during their conversation at their grandmother's house, and then statements made by her mom and the victim when the siblings confronted their mom with the information.    The trial court sustained the objection to hearsay but noted that the question

---

[36]  State Rec., Vol. 5 of 10, Trial Transcript, p. 110 (stipulation).

had already been answered.[37]   Another instance occurred when Tracey Jackson with the Department of Children and Family Services began testifying to what the victim told her at their first meeting.   Counsel objected to hearsay, albeit belatedly, as he acknowledged. The trial court did not make a ruling and just told counsel to proceed.[38]

The untimely objections did not prejudice Raye.   Because this was a bench trial, the trial court had the expertise to consider the testimony in light of the belated hearsay objections and give it the proper weight.   Furthermore, S.D. testified similarly to S.W. that the victim told her she was being touched inappropriately by her father, and S.D's testimony was allowed as an exception to hearsay over the defense's objection.[39]   Additionally, the victim in this case provided credible, convincing testimony at trial regarding what she told her siblings and her mother, and related in extensive detail the incidents that occurred with her father.   Defense counsel had ample opportunity to cross-examine the victim.   The outcome of the proceedings would have been no different had counsel objected sooner to S.W. or Jackson's testimony given the victim's direct testimony, which the trial judge found to be "extremely credible."[40]   The claim is meritless.

Although Raye cites to *United States v. Cronic*, 466 U.S. 648 (1984), and suggests generally that prejudice should be presumed due to a complete denial of counsel and failure to subject his case to meaningful adversarial testing, his reliance on *Cronic* is unsupported

---

[37]   State Rec., Vol. 5 of 10, Trial Transcript, pp. 20-22.

[38]   State Rec., Vol. 5 of 10, Trial Transcript, pp. 65-66.

[39]   State Rec., Vol. 5 of 10, Trial Transcript, p. 38.

[40]   State Rec., Vol. 5 of 10, Trial Transcript, p. 157.

and misplaced. [41]    *Cronic* has limited applicability to a narrow and specific set of circumstances, which do not apply here.    The *Cronic* presumption of prejudice arises only when (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing;" or (3) counsel "is called upon to render assistance where competent counsel very likely could not."    *Cronic*, 466 U.S. at 658-59 (citations omitted).    Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation may be found.    *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).    "As *Cronic* suggests—and we have stressed—prejudice is not presumed unless an attorney *entirely* fails to defend his client."    *Thomas v Davis*, 968 F.3d 352, 355 (5th Cir. 2020) (citing *Bell v. Cone*, 535 U.S. 685, 695 (2002)).    "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel.    [B]ad lawyering, regardless of how bad, does not support the per se presumption of prejudice."    *Johnson v. Cockrell*, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998) (quoting *Childress*, 103 F.3d at 1228-29).

Here, contrary to Raye's assertions, the state-court record demonstrates that defense counsel conducted adequate discovery, effectively litigated pretrial motions, and actively engaged in his defense by consulting with Raye, challenging evidence and examining witnesses at trial.    Raye had two appointed counsel of record throughout pretrial and trial

---

[41]   Raye appears to rely on *Cronic* for his claim that he was denied counsel because his attorney, Mr. Walker, was not eligible to practice law in Louisiana.    See Rec. Doc. 5-3, pp. 14-15 and Rec. Doc. 20, Traverse.

proceedings.    His claim that one attorney was ineligible to practice law was contradicted by the record evidence in this case.    Raye has not established that he was constructively denied counsel under the *Cronic* standard.[42]

*Claim 2 – Failure to Object to Insufficient Evidence to Sustain Conviction*

Raye argues that counsel failed to "object to evidence insufficient to sustain his conviction, and to file appropriate motion for mistrial, new trial and post verdict judgment of acquittal, which prejudice him at trial."[43]    He also alleges that he was convicted on hearsay introduced by the State through virtually every witness "where each testified on one or more accounts to, inconsistent with out-of-court statements, to 'other crimes', as well as to other evidence which violates the exclusion to hearsay Rules."[44]    Essentially, Raye attempts to label everything else as hearsay and minimize the impact of the victim's direct persuasive testimony by arguing that her account of sexual assault was entirely unsupported and uncorroborated, and, therefore, it was unworthy of belief and insufficient to prove the elements of the crimes.    The state court of appeal issued the last reasoned decision finding no merit to Raye's claim for relief.    The appellate court noted that the sufficiency argument, upon which Raye's ineffectiveness claim was based, was soundly rejected on direct appeal, and the trial testimony by S.D. and S.W. was not hearsay; thus, objections would not have been warranted and no ineffectiveness was established under *Strickland*.

---

[42]    To the extent any of the subclaims (7, 8, 10) overlap with his remaining claims for relief, they will be considered in that section later in this report.

[43]    Rec. Doc. 5-3, p. 26. He frames the claim here in the same context he did during post-conviction review proceedings in the state courts and raises only an ineffective-assistance-of-counsel claim on federal habeas review.

[44]    Rec.Doc. 5-3, p. 19.

On direct appeal, the Louisiana Fifth Circuit rejected Raye's sufficiency-of-the-evidence claim where he argued the same grounds underlying his ineffectiveness-of-counsel claim.[45]    The court of appeal held that "C.R.'s testimony, coupled with her statements made in the CAC interview, established each element of the five offenses... [and] the trial judge clearly chose to believe the testimony of C.R. over defendant's testimony."[46]    The trial judge's ruling and the ruling on direct appeal were both based on the direct and "extremely credible" testimony of the victim, C.R.    The resolution of whether other testimony offered by witnesses constituted hearsay in no way alters or negates C.R.'s credibility as a witness as determined by the trier-of-fact.    As the state court held, in reviewing the claim under *Jackson v. Virginia*, 443 U.S. 307 (1979), a court may not second-guess the credibility determinations made by the trier-of-fact.    Thus, Raye's counsel had no legal grounds to base a motion for mistrial, new trial or a motion for post-verdict judgment of acquittal on the credibility determinations made by the trier-of-fact, who in this case, was the trial judge. Counsel does not perform deficiently in failing to lodge a meritless objection.    *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (counsel is not required to make futile motions or objections); *see also Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."). The failure to raise a meritless objection or motion cannot form the basis of a successful ineffective-assistance-of-counsel claim because the result of the proceeding would have been no different had counsel raised the issue.    *Odis v. Vannoy*, Civ. Action 18-9877, 2019

---

[45]  *State v. Raye*, 230 So.3d at 666-67.

[46]  *Id.* at 667.

WL 6716956, at *11 (E.D. La. Dec. 10, 2019).    Raye does not allege, nor does the record show, that he was prejudiced in any manner on direct appeal by the omitted motions since the appellate court fully considered the sufficiency argument on the merits.    This claim does not warrant federal habeas relief.

*Claim 3 – Failure to Object to Prosecutorial Misconduct*

Raye alleges that counsel should have objected to prosecutorial misconduct when the state prosecutor elicited "other crimes" evidence through S.D. and C.R., made prejudicial remarks concerning "other crimes" evidence/hearsay alleged against Raye, and withheld evidence of Detective Raye's arrest warrant affidavit.[47]    The claim was considered and denied in a well-reasoned ruling by the Louisiana Fifth Circuit on post-conviction review. The Louisiana Supreme Court subsequently denied the claim for relief without citing additional reasons.

As previously discussed, the record evidence shows that the State provided the police report and arrest warrant to defense counsel during discovery and the discovery receipt reflects that the affidavit and warrant of arrest were included and received by the defense. Obviously, no objection was needed because the defense was in receipt of the documents Raye mentions.    Furthermore, the defense's lack of concern over any misstatement included in Detective Raye's arrest warrant affidavit was entirely reasonable and proper under the circumstances.    The CAC videotape itself, which was what Detective Raye based his narrative upon, was played at trial.    Thus, the trial court heard the victim's direct statement regarding her initial disclosure, including the circumstances surrounding it and to

---

[47] Rec. Doc. 5-3, pp. 26-27.

whom it was made.    Detective Raye testified at trial that he never spoke to the victim and merely observed her CAC interview.    The victim and her siblings all testified consistently regarding when the initial disclosure was made.    Defense counsel plainly had no grounds for a meritless prosecutorial misconduct objection for either a failure to disclose or for any inconsistency in Detective Raye's arrest warrant affidavit.

His other two assertions involve "other crimes" evidence concerning Raye's inappropriate interaction with another sibling, S.D.    He argues that defense counsel failed to object when the prosecution improperly elicited this information from S.D. and questioned Raye about it at trial.    However, as the Louisiana Fifth Circuit reasoned in rejecting these claims for relief, there was no misconduct on the part of the prosecution in mentioning the issue on redirect only *after* defense counsel himself first questioned S.D. on cross-examination if there had been any prior accusations against Raye.    Indeed, the record reflects that defense counsel consulted with Raye before he asked the question.    S.D. tried to plead the Fifth Amendment, indicating she did not want to answer it, but then ultimately denied that there were any accusations before this incident.    Subsequently, on redirect, when the prosecutor asked S.D. if that was the truth, and the trial judge reminded her that she was sworn to tell the truth, she stated reluctantly that it had happened to her.[48]    Raye subsequently testified in his own defense.    The prosecution asked Raye on cross-examination about S.D.'s earlier testimony and if he had an explanation for her account.    He indicated that she was lying and that he had no idea why she would lie about it.[49]    Raye

---

[48]  State Rec., Vol. 5 of 10, Trial Transcript, pp. 42-45.

[49]  State Rec., Vol. 5 of 10, Trial Transcript, pp. 147-48.

testified that S.D. was an open person and she would have no problem speaking her mind and telling her mom or someone if something had occurred.[50]    Given that it was defense counsel who opened the door to the testimony, perhaps in the hopes of strengthening the defense's case, and, in particular, supporting Raye's testimony regarding the lack of any reported incidents or accusations where he had acted inappropriately with his daughters or their friends,[51]  the prosecution's subsequent questions were proper and any misguided objection based on prosecutorial misconduct would have been overruled.    The state court correctly determined that counsel's failure to raise a meritless objection based on purported prosecutorial misconduct in connection with "other crimes" evidence was not constitutionally deficient performance under *Strickland*.

   *Claim 4 - Failure to Object to Perjured Testimony*

   Raye asserts that counsel was constitutionally ineffective for failing to object when the prosecution knowingly offered perjured testimony by S.D. that Raye had done this to her in the past.    The Louisiana Fifth Circuit likewise denied this claim because the defense opened the door to the issue by first questioning the witness about it, and Raye failed to show any perjured testimony to which an objection would have been proper or any resultant prejudice.    The Louisiana Supreme Court denied relief citing no additional reasons.

   Considering that S.D.'s testimony was elicited by the defense in the first instance, the defense hardly had grounds to object if S.D. clarified that testimony later during questioning by the prosecution.    Additionally, Raye offers no support for his conclusory assertion that

---

[50]  State Rec., Vol. 5 of 10, Trial Transcript, p. 153.

[51]  State Rec., Vol. 5 of 10, Trial Transcript, pp. 134, 141-42, 145.

her testimony was false.    At trial, he offered no basis for why she would fabricate allegations against him.    The record itself contains no objective evidence to support his assertion.    The mere fact that she denied an incident because she admittedly did not want to talk about it, but then later, upon further questioning and admonition to tell the truth, reluctantly conceded something had happened to her, does not prove the testimony false. The inconsistency simply presents a credibility issue for the trier of fact.    *See Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002); *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (holding that conflicting testimony does not prove perjury but instead establishes a credibility question for the jury).    The decision not to object based on perjury or to belabor the issue and subject S.D. to further re-cross on the matter was reasonably and objectively sound.[52]

Under the circumstances, the state court reasonably determined that counsel did not perform deficiently by not objecting to perjury.    Furthermore, the trial court, as the trier of fact, listened to her testimony in its entirety and was able to weigh the inconsistencies, along with Raye's testimony, and make its own determination as to her believability and the ultimate weight to accord it.    Thus, as the state court correctly found, no prejudice resulted from the defense not raising an objection in this instance.

*Claim 5 – Failure to Object to a Defective Indictment*

Finally, Raye maintains that defense counsel should have moved to quash the alleged defective indictment.    The state court of appeal on direct review found no error patent

---

[52]   Raye alleged an unsupported subclaim number ten, as part of claim one, that counsel should have recalled S.D. for re-cross examination to impeach her prior trial testimony.    Rec.Doc. 5-3, p. 13.

related to the indictment, and, likewise on collateral review in the last reasoned decision, found that Raye "failed to demonstrate, factually or legally, why his counsel should have filed such a motion, that he would have been successful, or how the filing of the motion would have affected the outcome of his trial."[53]

Raye argues that the grand jury indictment "fails to factually and distinguishably set forth all essential elements which constitute the offense charged against him whether by statute or by plain language."[54]   He alleges the indictment failed to provide the victim's name, age, gender, the statutory subsection, and specific acts.   He also asserts that the vagueness associated with count three (La. R.S. 14:43.1) subjected him to duplicity of the charged offense and the potential for future double jeopardy.   Here, the state courts, including the Louisiana Supreme Court, found no objection was warranted because the indictment sufficed under state law.   This Court on federal habeas review need not and will not weigh in or second-guess a sufficiency determination for a state indictment under Louisiana law.   See Lee v. Vannoy, Civ. Action 19-12280, 2020 WL 3513743, at *12 (E.D. La. June 1, 2020), adopted 2020 WL 3512709 (E.D. La. June 29, 2020).

Under controlling federal law, an indictment is sufficient if it both informs the defendant of the accusation against him, thereby allowing him to prepare his defense, and affords him protection against double jeopardy.   United States v. Debrow, 346 U.S. 374 (1953).   The indictment in this case set forth in sufficient detail the statutory offenses charged, against the "known juvenile" victim identified by date of birth, and the relevant time

---

[53]   State Rec., Vol. 3 of 10, *Raye v. N. Burl Cain, Warden*, 20-KH-114 (La. App 5 Cir. Apr. 23, 2020), p. 7 (Claim 5).

[54]   Rec. Doc. 5-3, p. 39.

frames for the offenses.[55]   As part of the discovery process, the defense filed a motion for bill of particulars and requested a preliminary examination at which the State presented facts detailing and supporting the elements of each charged offense.[56]   Raye cannot seriously dispute that he had sufficient information regarding the alleged victim, who was identified only by birthdate, but was his biological daughter.   Under the circumstances, a decision by counsel not to challenge the indictment on grounds that it prevented Raye from defending against the charges would have been objectively reasonable.

He also failed to allege any valid grounds to support his claim of potential future jeopardy based on the offense charged in count three of the indictment.   The statutory criminal provision for sexual battery is specified, as well as the relevant subsections that would be implicated for a child not only under 15, but under 13 years of age, during the time frame alleged for the incident (between July 6, 2010 and July 5, 2012).   Count four also charges sexual battery, but plainly alleges a distinct time frame and poses no threat of double jeopardy.

As the state courts properly determined, Raye has not established any basis for his counsel to have filed a motion to quash the indictment.   Counsel does not provide ineffective assistance by failing to assert a meritless motion.   *Evans v. Davis*, 875 F.3d 210, 218 (5th Cir. 2017) ("Obviously, counsel is not deficient for failing to make meritless ... motions.").   Under this scenario, he cannot show prejudice.   This claim does not warrant federal habeas relief.

---

[55]   State Rec., Vol. 1 of 10, Grand Jury Indictment.

[56]   State Rec., Vol. 1 of 10, Motion for Bill of Particulars and Discovery and Inspection; State Rec., Vol. 5 of 10, Preliminary Hearing held July 2, 2013.

In summary, Raye has not shown that the state-court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Raye's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[57]

New Orleans, Louisiana, this ___29th___ day of _____September_____, 2021.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[57] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.